UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TALLON HODGES,<br><br>        Plaintiff,<br><br>   v.<br><br>BILL KUNKEL, M.D. and DR. NAVARRO, M.D.,<br><br>        Defendants. | No. C09-5624 BHS/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  November 26, 2010** |

Before the court is the motion for summary judgment of Defendant Navarro. ECF No. 25.[1] Plaintiff Tallon Hodges did not file a response. His failure to do so may be deemed by the court as an admission that the Defendant's motion for summary judgment has merit. CR 7(b)(2).

Defendants argue that Plaintiff's claims should be dismissed because he has failed to state a claim for violation of his Eighth Amendment rights, has failed to exhaust administrative remedies, and that his claims against Dr. Kunkel should be dismissed because Dr. Kunkel is deceased.

Having carefully reviewed the parties' pleadings, supporting declarations, and balance of the record, and viewing the evidence in the light most favorable to Mr. Hodges, the undersigned recommends that the Defendants' motion for summary judgment be granted because Plaintiff has

---
[1] Defendants also list the State of Washington and Washington State Department of Corrections as defendants joining in the motion. However, these entities are not named as Defendants in the First Amended Complaint. *See* ECF No. 8.

REPORT AND RECOMMENDATION - 1

failed to exhaust his administrative remedies. The court also finds that his claims against Dr. Kunkell should be dismissed with prejudice. The court does not address the merits of Plaintiff's claims as it finds that he has failed to exhaust his administrative remedies.

## STATEMENT OF FACTS

**A.    Plaintiff's Medical Condition**

In June of 2009, Tallon Hodges was playing soccer at Timpani Field, an exercise area located at the WCC, when he broke the 5th metacarpal of his right hand, or pinky finger. Mr. Hodges was evaluated by WCC medical staff and was referred for surgery with Dr. Kunkel. Dr Kunkel, an orthopedic surgeon who contracted with the State to provide services for inmates at Shelton, performed day surgery on July 14, 2009 and placed a pin in the finger to facilitate healing of the fracture. ECF No. 28, p. 3, ll. 1-3. After surgery, Mr. Hodges's hand was immobilized, he received routine pain medication and follow up.  On August 10, 2009, Mr. Hodges returned to the clinic stating that the pin in his pinky fell out when he was changing his dressing. An x-ray was taken and it reflected that the pinky finger had not healed. *Id.*, p. 3, ll. 12-16. The clinic splinted the finger and the plan was to have Mr. Hodges see Dr. Kunkel the next time he visited Shelton. Dr. Kunkel died four days later in a scuba diving accident while on vacation in British Columbia. *Id.*, p. 3, l. 17.

Inmates at WCC and at all Washington Correctional facilities can access medical care by either declaring a medical emergency or signing up for sick call. Mr. Hodges is familiar with both of these processes. ECF No. 26, Exh. 4 (Deposition of Hodges), p. 11, ll. 6-8.  Mr. Hodges did not seek further care for the hand in the prison infirmary, but instead filed a grievance on September 3, 2009.  ECF No. 26, Exh. 4, p. 31, ll. 5-7.  Washington State DOC institutions have a three-step grievance process. On September 10, 2009, at the request of the grievance

REPORT AND RECOMMENDATION - 2

coordinator, Dr. Navarro performed a review of the plaintiff's file. ECF No. 28, p. 3, ll. 18-22. Dr. Navarro was not previously involved in the treatment of Mr. Hodges's broken finger prior to performing the file review. Based on his review, Dr. Navarro upgraded Mr. Hodges's status to be seen by an outside specialist to see if further treatment was needed. ECF No. 28, p. 3, ll. 23-26.

At the time of the review, Mr. Hodges's finger had already been re-splinted and he had access to pain medication. *Id.*, p. ll. 9-10. Dr. Navarro learned that Mr. Hodges was scheduled to be transferred to the Washington State Penitentiary in Walla Walla in the following weeks, so Dr. Navarro made the medical determination the consult could occur when Mr. Hodges arrived in Walla Walla. *Id.*, p. 4, ll. 14-23. Dr. Navarro states that he did not request an emergency consult because a broken 5th metacarpal/pinky finger is not a serious injury. *Id.*, p. 4, ll. 7-17. Dr. Navarro was also of the opinion that Mr. Hodges was not at risk for a potential loss of limb due to the broken finger and emergency consults for minor injuries like a broken pinky finger are not necessary in order to obtain full function. *Id.* In addition, having the consult occur in Walla Walla made sense from a practical standpoint. *Id.*, p. 4, ll. 14-23. Once an injury is evaluated by a specialist and a possible surgery is indicated, it is the best medical practice that continuity of care be maintained if possible. *Id.* According to Dr. Navarro, this is the same type of medical treatment that Mr. Hodges would have received if this sort of injury had occurred in the community under similar circumstances, until he saw a specialist. *Id.*, p. 4, ll. 11-13.

**B.     Grievance Process**

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a Department-wide basis in 1985. ECF No. 27, p. 2, ¶ 3 (Declaration of Ron Frederick). Under Washington's OGP, an offender may file a grievance

REPORT AND RECOMMENDATION - 3

over a wide range of aspects of his/her incarceration. *Id.* ¶ 4. Inmates may file grievances challenging: (1) DOC institution policies, rules and procedures; (2) the application of such policies, rules and procedures; (3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; (4) the actions of staff and volunteers; (5) the actions of other offenders; (6) retaliation by staff for filing grievances; and (7) physical plant conditions. An offender may not file a grievance challenging: (1) state or federal law; (2) court actions and decisions; (3) Indeterminate Sentence Review Board actions and decisions; (4) administrative segregation placement or retention; (5) classification/unit team decisions; (6) transfers; (7) disciplinary actions; and (8) several other aspects of incarceration. *Id.*

The OGP provides a wide range of remedies available to inmates. *Id.* ¶ 5. These remedies are outlined at OGP page 27 and include: (1) restitution of property or funds; (2) correction of records; (3) administrative actions; (4) agreement by department officials to remedy an objectionable condition within a reasonable time; and (5) a change in a local or department policy or procedure. *Id.*

The grievance procedure consists of four levels of review. *Id.* ¶ 6. At Level 0, the complaint or informal level, the offender writes a complaint; the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the offender for additional information, or accepts the complaint and processes it as a formal grievance. *Id.* At Level I, the local grievance coordinator responds to the issues raised by the offender. *Id.* If the offender is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II. *Id.* All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds. *Id.* If the offender is still not satisfied with the response, he may make a Level III appeal to the Department headquarters, where the issue is reinvestigated and

REPORT AND RECOMMENDATION - 4

administrators respond. *Id.* At the time of the alleged incident, inmates had five days to file a grievance. *Id.* ¶ 7. There are exceptions to this timeline depending on the reason for the delay. *Id.*

Mr. Hodges filed one grievance regarding an orthopedic consult (Grievance log ID Number 0919732 dated September 3, 2009). ECF No. 27, p. 4, p 12. On September 16, 2009, Mr. Hodges filed a premature appeal. On September 21, 2009, an official response to his Level I grievance was issued. On September 29, 2009, Mr. Hodges appealed the Level I grievance to Level II. On October 12, 2009, a response to his Level II grievance was issued. Mr. Hodges did not appeal the Level II response. *Id.* At the time he filed his First Amended Complaint, Mr. Hodges acknowledged that he was "at the second level of [his] grievance." ECF No. 8, p. 3.

## SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those positions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 788 F.2d 254, 259 (6th Cir. 1986). On an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing

REPORT AND RECOMMENDATION - 5

party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S. Ct. 2502, 91 L.Ed.2d 202 (1986). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

The Ninth Circuit has expressly stated that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). A plaintiff cannot rest upon the allegations in his complaint, but must establish each element of his claim with "significant probative evidence tending to support the complaint." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1980). A party opposing a motion must present facts in evidentiary form and cannot rest upon the pleadings. *Anderson*, 477 U.S. 242. Genuine issues of material fact are not raised by conclusory or speculative allegations. *Lujan*, 497 U.S. 871. The purpose of summary judgment is not to replace conclusory allegations in pleading form with conclusory allegations in an affidavit. *Lujan*, 497 U.S. at 888; *cf. Anderson*, 477 U.S. at 249. Bare assertions unsupported by evidence do not preclude summary judgment. *California Architectural Bldg. Prods., supra*.

REPORT AND RECOMMENDATION - 6

**DISCUSSION**

**A.    Exhaustion of Remedies**

The Prison Litigation Reform Act of 1995 (PLRA) mandates that:

<u>No action shall be brought with respect to prison conditions</u> under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e [emphasis added].

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007). Inmates must exhaust their prison grievance remedies before filing suit if the prison grievance system is capable of providing any relief or taking any action in response to the grievance. "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 740, 742 (2001).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 543 U.S. 516, 532 (2002). The underlying premise is that requiring exhaustion "reduce[s] the quantity and improve[s] the quality of prisoner suits, [and] affords corrections officials an opportunity to address complaints internally. . . . In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.*

Requiring proper exhaustion serves all of the goals of the rulings in *Nussle* and *Booth*, providing inmates an effective incentive to use the prison grievance system and thereby provides prisons with a fair opportunity to correct their own mistakes. *Woodford v. Ngo*, 548 U.S. 81, 93-94, 126 S. Ct. 2378 (2006). This is particularly critical to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* at 94 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 [1973]). Courts have a limited role in reviewing the difficult and complex task of modern prison administration. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 [1987]) (urging a policy of judicial restraint as prison administration requires expertise, planning and the commitment of resources, all of which are the responsibility of the legislative and executive branches). *Turner v. Safley*, 482 U.S. at 84-85.

The Supreme Court reaffirmed this in *Woodford, supra.* In that case, the Court not only upheld the requirement that the inmates fully exhaust available administrative remedies, but it also held that those attempts needed to be done in a timely manner. *Id.* at 90-91.

The record reflects that there was a grievance procedure available to Mr. Hodges, which allowed him to file grievances challenging aspects of his incarceration. ECF No. 27. The record also reflects that Mr. Hodges filed one complaint regarding an orthopedic consult (Grievance log ID Number 0919732 dated September 3, 2009). ECF No. 27, p. 4, p 12. On September 16, 2009, Mr. Hodges filed a premature appeal. On September 21, 2009, an official response to his Level I grievance was issued. On September 29, 2009, Mr. Hodges appealed the Level I grievance to Level II. On October 2, 2009, Mr. Hodges filed his complaint in this case. ECF No. 1. On October 12, 2009, a response to his Level II grievance was issued. Mr. Hodges

REPORT AND RECOMMENDATION - 8

did not appeal the Level II response. *Id.* Mr. Hodges acknowledges that at the time he filed his complaint, he was "at the second level of [his] grievance." ECF No. 8, p. 3.

Accordingly, the undersigned finds that Mr. Hodges filed his lawsuit prematurely and that his claims should be dismissed without prejudice for failure to exhaust. Because the court finds that Mr. Hodges has failed to exhaust his administrative remedies, the court lacks discretion to resolve his claims on the merits. *See, e.g., Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999) (suit filed by prisoner before administrative remedies have been exhausted must be dismissed; district court lacks discretion to resolve claim on merits, even if prisoner exhausts intra-prison remedies before judgment). Therefore, it is not necessary to address the issue of Dr. Navarro's medical indifference or malpractice.[2]

**B.      Death of Defendant Kunkel**

Defendant Kunkel passed away on August 9, 2009. ECF No. 12. Counsel for Defendants served a notice of death on the court and Plaintiff on January 12, 2010. *Id.* Pursuant to Fed. R. Civ. P. 25(a)(1) if a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

No motion to substitute has been filed. Accordingly, the undersigned recommends that Plaintiff's claims against Dr. Kunkel be dismissed.

---

[2] Defendants also raise issues relating to the State and Department of Corrections (Eleventh Amendment immunity and whether these entities can be considered "persons" under § 1983). ECF No. 25, p. 4. A noted above, however, these entities are not named as parties in the Amended Complaint. ECF No. 8.

REPORT AND RECOMMENDATION - 9

## CONCLUSION

The undersigned recommends that Defendants' motion for summary judgment (ECF No. 25) be **GRANTED** and that the Mr. Hodges' claims against the Defendants as discussed herein be **dismissed without prejudice** for failure to exhaust; and **with prejudice as to Defendant Kunkel**, who is deceased.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 26, 2010**, as noted in the caption.

DATED this  4th  day of November, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10